UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BERNARD B. IDLISAN,

                              Plaintiff,

v.                                                5:12-CV-01790 (MAD/TWD)

SUNY UPSTATE MEDICAL UNIVERSITY,
HEATHER BALDWIN, and LINDSAY
PICCOTTI,

                              Defendants.
_____

APPEARANCES:

BERNARD B. IDLISAN
Plaintiff *pro se*
1402 Jefferson Avenue, First Floor
Brooklyn, New York 11237

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

The Clerk has sent two *pro se* Complaints together with an application to proceed *in forma pauperis* to the Court for review.[1] (Dkt. Nos. 1, 1-1 and 2.) One of Plaintiff Bernard B. Idlisan's Complaints alleges employment discrimination under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111-12117 ("ADA") by Defendants SUNY Upstate Medical University ("SUNY Upstate") and Heather Baldwin ("Baldwin"), and attempted bribery

---

[1] The Clerk's Office has assigned the two Complaints, which involve the same parties and same allegedly discriminatory failure to hire, the same civil filing number. Furthermore, it appears that Plaintiff intended to bring a single lawsuit. Therefore, the Court will consider the two Complaints as a single action.

by Defendant Piccotti ("Piccotti"). (*See generally* Dkt. No. 1.) Plaintiff's other Complaint alleges employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII") by SUNY Upstate and Baldwin and attempted bribery by Piccotti. (*See generally* Dkt. No. 1-1.) Plaintiff's discrimination claims alleged under Title VII include failure to hire based upon his national origin, race, and prior criminal conviction. (Dkt. No. 1-1.)

I. **ALLEGATIONS OF THE COMPLAINT**

Plaintiff's nation of origin is the Phillippines, and he is Asian by race. (Dkt. No. 1-1 at ¶ 8.) He has been diagnosed with severe triple vessel heart disease. (Dkt. No. 1 at ¶ 6 and pp. 7-10[2].) Plaintiff was found guilty of grand larceny and bail jumping in 2007 and imprisoned for two years. *Id*. at ¶¶ 8-9 and p. 5.

Plaintiff received a B.S. in accounting from Zamboanga A.E. Colleges in the Phillippines, and before coming to the United States, he worked in the Phillippines Children's Medical Center in Quezon City from 1986 to 1994, first as a medical clerk and later as a records officer. *Id.* at p. 35. As a records officer, Plaintiff was responsible for managing and supervising a medical records section of the hospital; assembling records; preparing coded reports, verified data and abstracted information; compiling data from medical records; evaluating and disciplining employees under his supervision; and implementing training and review programs. *Id*.

After coming to the United States, Plaintiff worked in the accounting department at a furniture store in Queens, New York from 1994 to 2001, performing a variety of duties such as

---

[2] Citations to page numbers throughout this Order refer to the page numbers assigned by the Court's electronic filing system.

bookkeeping, maintaining accounts, encoding data, and managing accounts payable and receivable. *Id*. Since leaving the furniture store job, Plaintiff has had a couple of very short term jobs and worked as an information clerk at the Board of Elections in Brooklyn, New York for a period of time beginning in August of 2010. *Id*. at pp. 34 and 37.

On May 25, 2011, Plaintiff was certified as an individual with a physical disability that qualified him for an employment consideration pursuant to New York Civil Service Law §§ 55-a and 55-b/c[3], as job ready, and as likely to succeed in performing the duties of accounting clerk or any clerical position in an office setting. (Dkt. No. 1-1 at p. 47.) Plaintiff was placed on the list of eligible candidates qualified for clerical positions at SUNY Upstate. *Id*. at p. 10. In or about December of 2011, Plaintiff passed Civil Service examinations for Hospital Patient Services Clerk and Nursing Station Clerk I with ratings of 90% and 80%, respectively. *Id*. at p. 9.

Plaintiff applied for a total of thirty-four Clerk I and 1/Trainee positions at SUNY Upstate over a period from February of 2011 through January of 2012. *Id*. at pp. 11, 38-39. At least twenty-two of the positions were filled by others. *Id*. at p. 11. None of the positions were offered to Plaintiff. *Id*.

Defendant Baldwin is the SUNY Upstate Human Resources Department employee to whom Plaintiff sent his May 24, 2011 application for the position of Hospital Patient Services Clerk I, a position that was filled by someone else. *Id*. at 7-8, 38. The only factual allegations in either of Plaintiffs' Complaints with regard to Baldwin are that she was a human resources recruiter at SUNY Upstate and that she called Plaintiff to let him know that his "application will

---

[3] Civil Service Law § 55-b provides state employment opportunities in noncompetitive positions for individuals with physical and mental disabilities.

3

be referred to the hiring manager for consideration." (Dkt. No 1 at ¶ 6.) Plaintiff has included his job application letter of May 24, 2011 to Baldwin and follow up letter to her of August 1, 2011 as exhibits to his Title VII Complaint. (Dkt. No. 1-1 at pp. 7-8.)

On March 5, 2012, Plaintiff filed a complaint against Defendants SUNY Upstate and Baldwin with the New York State Division of Human Rights ("NYSDHR") alleging discrimination based upon disability, national origin, race, and his prior criminal conviction . *Id*. at pp. 10-15. The NYSDHR found no probable cause that SUNY Upstate had engaged in discriminatory conduct. *Id*. at p. 40-41. The Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter on October 26, 2012. (Dkt. No. 1 at 9.) The two Complaints in this action were filed on December 5, 2012.[4]

## II.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 5), the Court finds that Plaintiff may properly proceed with this matter *in forma pauperis*.

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

28 U.S.C. § 1915(e) directs that when a plaintiff is permitted to proceed *in forma pauperis*, " the court shall dismiss the case at any time if the court determines that  . . . the action . . . (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(I)-(iii).

---

[4] Plaintiff, as required, filed his lawsuit under the ADA and Title VII within ninety days of his receipt of the October 26, 2012 EEOC right-to-sue letter. (Dkt. No. 1-1, Exh. Z.) *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(1); *see also Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless, such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "threadbare recitals of the elements of a cause of action,

5

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendants*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted).

## IV. ANALYSIS

### A. Plaintiff's ADA Claim

Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[5] 42 U.S.C. § 12112(a). Plaintiff claims that Defendants SUNY Upstate and Baldwin violated the ADA by failing to hire him to fill any of the numerous positions for which he had applied because of his disability.

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity." *Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009) (citation and internal quotation marks omitted). Eleventh Amendment immunity extends to

---

[5] To establish a disability discrimination claim under the ADA, a plaintiff must prove that: (1) defendant is subject to the ADA; (2) plaintiff was a person with a disability under the ADA; (3) plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his or her disability. *See Shannon v. New York City Transit Authority*, 332 F.3d 95, 99 (2d Cir. 1998).

"state agents and state instrumentalities that are, effectively, arms of a state." *Id*. at 62 (citation and internal quotation marks omitted). SUNY Upstate, as a state instrumentality, is entitled to immunity absent a waiver or abrogation of its Eleventh Amendment immunity.[6] *See Lee v. Saltzman*, No. 10-CV-1038, 2011 WL 5979162, at *3, 2011 U.S. Dist. LEXIS 135925, at *8 (W.D.N.Y. Nov. 27, 2011) (Skretny, C.J.) Defendant Baldwin, alleged to be an employee in the SUNY Upstate Human Resources Department, is also immune from suit for money damages absent a waiver or abrogation of Eleventh Amendment immunity from claims brought against her in her official capacity.[7] *See Gorton*, 554 F.3d at 62 (Eleventh Amendment immunity extends to state agents acting in their official capacity). However, a state official's immunity does not extend to claims for prospective equitable relief asserted against the official in his or her official capacity. *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (punctuation omitted).

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363-64, 368-74 (2011), the Supreme Court held that Title I of the ADA does not validly abrogate state Eleventh Amendment immunity, despite Congressional intent to do so. Nor has the State waived its immunity with regard to claims under Title I of the ADA. *See Canales-Jacobs v. New York State Office of Court Admin.,* 640 F. Supp.2d 482, 498 (S.D.N.Y. 2009). As a result, Plaintiff's claim against SUNY Upstate for money damages and injunctive relief under Title I of the ADA

---

[6] *See Dube v. State University of New York*, 900 F.2d 587, 594 (2d Cir. 1990), *cert. denied*, 501 U.S. 1211 (1991) (for purposes of the Eleventh Amendment, "SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party.") (citation and internal quotation marks omitted ).

[7] Plaintiff has not indicated in his Complaints whether he is suing Defendants Baldwin and Piccotti in their official or individual capacities. For purposes of this 28 U.S.C. § 1915(e) review, the Court has assumed that Plaintiff intends to sue the Defendants in both capacities.

is barred in its entirety by the Eleventh Amendment. *See also Federal Maritime Com'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 765 (2002) ("[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief [against a state instrumentality]."); *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp.2d 265, 275 (N.D.N.Y. 2012) ( Eleventh Amendment precludes plaintiff from seeking any relief against state agencies – including monetary and injunctive relief).

Plaintiff's claim for money damages against Defendant Baldwin in her official capacity is also barred by the Eleventh Amendment. *See Hamzik*, 859 F. Supp.2d at 275. His claim against Baldwin in her official capacity for the equitable remedy of instatement is not barred by the Eleventh Amendment. *See Abdur-Raheem v. Selsky*, 598 F. Supp.2d 367, 369 (W.D.N.Y. 2009) (Eleventh Amendment does not bar claims for prospective equitable relief against state officials sued in their official capacities) (citing *Ex parte Young*, 209 U.S. 123 (1908)). However, Baldwin is not claimed to have been involved in the allegedly discriminatory hiring decisions beyond referring at least one of Plaintiff's job application to the hiring manager for consideration. (Dkt. No. 1 at ¶ 6.) There are no allegations in the Complaints or factual matter in the exhibits from which the Court can infer that Baldwin had any control whatsoever over who was ultimately hired for the positions for which Plaintiff had applied. Therefore, Plaintiff has not stated a facially plausible claim under the ADA against Baldwin.

Title I of the ADA has been found not to permit actions against defendants in their individual capacities. *See, e.g., Carlson v. Geneva City School Dist.*, 679 F. Supp.2d 355, 378 (W.D.N.Y. 2010) (actions against defendants in their individual capacities are not permitted under Title I of the ADA); *Fox v. State University of New York*, 497 F. Supp.2d 446, 449

(E.D.N.Y. 2007) (There is no individual liability under Title I of the ADA) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). As a result, Plaintiff cannot state an ADA claim for money damages against Defendant Baldwin in her individual capacity.

In light of the foregoing, I recommend that Plaintiff's ADA claim against Defendant SUNY Upstate and against Defendant Baldwin in her individual capacity be dismissed in their entirety, without leave to replead. I further recommend that Plaintiff's ADA claim for money damages against Defendant Baldwin in her official capacity be dismissed without leave to replead, and that his ADA claim for equitable relief against Baldwin in her official capacity be dismissed with leave to replead in the event as yet unpleaded facts exist that support the claim.[8]

**B.    Plaintiff's Title VII Claim**

Title VII makes it unlawful for an employer to "fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff's Title VII claim against Defendants SUNY Upstate and Baldwin is not barred by the Eleventh Amendment because Congress has abrogated states' immunity for Title VII discrimination claims alleging discrimination in a government workplace on the basis of race, sex, color, religion, or national origin. *See Dillard v. Runyon*, 928 F. Supp. 1316, 1322 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997). However, individuals are not subject to liability under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314-15 (2d Cir. 1995),

---

[8] The ADA incorporates the remedies of Title VII. See 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000e-5). A successful plaintiff on a failure to hire claim under Title VII can be awarded the equitable remedy of instatement to the next available position. *See Prudencio v. Runyon*, 3 F. Supp.2d 703, 705 (W.D. Va. 1998).

9

*abrogated on other grounds, Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998). Consequently, Plaintiff cannot state a viable Title VII claim against Defendant Baldwin, and the Court, therefore, recommends that his Title VII claim against her be dismissed without leave to replead.

Employment discrimination claims under Title VII are analyzed under the burden-shifting framework of *McDonald Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonald Douglas*, the initial burden is on the plaintiff to establish: (1) membership in a protected group; (2) that he or she is qualified for the job in question; (3) that he or she was rejected despite being qualified; and (4) circumstances that support an inference of discrimination. 411 U.S. at 802; *see also Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). The Supreme Court has instructed that a complaint in a Title VII action need not allege facts constituting a *prima facie* case of discrimination under the framework set forth in *McDonald Douglas,* 411 U.S. at 802 in order to avoid dismissal for failure to state a claim. *See Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 510-11 (2002). A plaintiff must, nonetheless, plead a discrimination claim "that is facially plausible and . . . give[s] fair notice to the defendant of the basis for the claim." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp.2d 210, 215 (S.D.N.Y. 2010) (citation omitted); *see also Iqbal*, 556 U.S. at 678.

The Court concludes that Plaintiff, through the allegations in his Title VII Complaint (Dkt. No. 1-1) and the numerous exhibits to that Complaint, has made a facially plausible showing of discrimination on account of race and national origin against SUNY Upstate. Therefore, I recommend that Plaintiff be allowed to proceed against SUNY Upstate on his Title VII claim of discrimination on the basis of race and national origin.

### C. Plaintiff's Claim of Discrimination Based upon his Prior Criminal Conviction

As a part of his Title VII claim, Plaintiff has alleged that Defendants discriminated against him on the basis of his prior criminal conviction.[9] Title VII, however, does not protect against employment discrimination based upon a prior criminal conviction. *See* 42 U.S.C. § 2000e-2(a)(1). The New York State Human Rights Law ("NYSHRL"), Executive Law § 296(15), on the other hand, does make it unlawful, unless sanctioned by statute, to deny employment based upon a prior criminal conviction. *See Allah v. City of New York Dept. of Parks & Recreation*, 162 F. Supp.2d 270, 274 (S.D.N.Y. 2001), *aff'd*, 47 Fed. Appx. 45 (2d Cir. 2002), *cert. denied*, 537 U.S. 1232 (2003). Section 296(15) references Article 23-A of the New York Correction Law, §§ 750-755, which prohibits the denial of employment based upon prior criminal convictions unless there is a direct relationship between the employment being sought and a previous criminal offense. N.Y. Correction Law § 752 (McKinney 2003).

New York has not, however, been found to have waived its Eleventh Amendment immunity for discrimination claims brought under the NYSHRL. *See Lambert v. New York State Office of Mental Health*, No. 97-CV-1347 (JG), 2000 WL 574193, at *7, 2000 U.S. Dist. LEXIS 5197, at *20 (E.D.N.Y. April 24, 2000) (Gleeson, J.)(collecting cases), *aff'd*, 22 Fed. Appx. 71 (2001); *see also Trivedi v. N.Y.S. Unified Court System Office of Court Administration*, 818 F. Supp. 2d 712, 722 (S.D.N.Y. 2011) (New York has not "explicitly and unequivocally waived its sovereign immunity with respect to claims brought under . . . [the NYSHRL]."). Therefore, the

---

[9] Plaintiff included discrimination based upon his criminal record in his complaint filed with the NYSDHR. (Dkt. No. 1-1 at p. 14.)

Court recommends that as with Plaintiff's ADA claim against Defendant SUNY Upstate, his claim for discrimination based upon his criminal conviction be dismissed against SUNY Upstate in its entirety, without leave to replead, and that his claim for money damages against Defendant Baldwin in her official capacity be dismissed on Eleventh Amendment grounds, without leave to replead. The Court further recommends dismissal of Plaintiff's claim for equitable relief under the NYSHRL asserted against Baldwin in her official capacity be dismissed, with leave to replead, for the same reasons relied upon by the Court in recommending dismissal of Plaintiff's ADA claim for equitable relief against Baldwin.

Unlike Title VII, under the NYSHRL liability for employment discrimination may, under certain circumstances, be imposed on individuals in their individual capacity. *See Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012).[10] An individual can be held liable under the NYSHRL if he or she has "power to do more than carry out personnel decisions made by others," or "actually participated in the conduct giving rise to a discrimination claim." *Tomka*, 66 F.3d at 1317. The NYSHRL also makes it an unlawful discriminatory practice for an individual to "aid, abet, incite, compel or coerce the doing of any of the acts forbidden" by the law. *See* N.Y. Executive Law § 296(6) McKinney 2005).

Plaintiff has not alleged facts supporting a claim that Defendant Baldwin had the power to do anything beyond referring Plaintiff's applications to the SUNY Upstate hiring manager, nor do Plaintiff's Complaints make a facially plausible showing that Baldwin aided or abetted in or

---

[10] The Eleventh Amendment does not bar claims asserted against Defendant Baldwin under the New York State Human Rights Law in her individual capacity. *Smith v. State University of New York*, No. 1:00-CV1454(FJS/RFT), 2003 WL 1937208, at *7, 2003 U.S. Dist. LEXIS 6835, at *23 (N.D.N.Y. April 23, 2003) (Scullin, S.J.).

coerced the decision not to hire Plaintiff for any of the jobs for which he had applied. Therefore, the Court recommends that Plaintiff's NYSHRL claim against Baldwin in her individual capacity be dismissed with leave to replead in the event Plaintiff can allege facts that support a claim for individual liability against her.

D.   **Plaintiff's Claim for Damages for Intentional Infliction of Emotional Distress**

In the claims for relief in his two Complaints, Plaintiff seeks damages for the Defendants' intentional infliction of emotional distress. (Dkt. No. 1 at ¶ 7; Dkt. No. 1-1 at ¶ 15.) To state a claim for the intentional infliction of emotional distress under New York law, plaintiff must allege: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Burns v. Cook*, 458 F. Supp.2d 29, 47 (N.D.N.Y. 2006) (quoting Restatement (Second) of Torts § 46 cmt. d (1965). Plaintiff has not asserted a facially plausible claim for intentional infliction of emotional distress in either of his Complaints, nor do the exhibits to the Complaints support such a claim. Therefore, the Court recommends that Plaintiff's claim that Defendants engaged in the intentional infliction of emotional distress be dismissed with leave to replead.

E.   **Plaintiff's Attempted Bribery Claim Against Defendant Piccotti**

Defendant Piccotti was not named in the complaint filed by Plaintiff with the NYSDHR. (Dkt. No. 1-1 at pp. 13-14.) Nor do Plaintiff's Complaints and exhibits suggest that Piccotti was involved in the allegedly discriminatory conduct being challenged by Plaintiff. Rather, Plaintiff

13

has accused Piccotti of attempting to bribe him (presumably to get him to withdraw his NYSDHR complaint against Defendants SUNY Upstate and Baldwin) by contacting him to arrange for a job interview shortly after he had filed the complaint. *Id.* at pp. 25, 28.

The only civil claim for bribery recognized under New York law is a claim for commercial bribery. *See Niagara Mohawk Power Corp. v. Freed*, 696 N.Y.S.2d 600, 602 (4th Dep't 1999)[11] (commercial bribery can constitute a civil cause of action). The elements of a commercial bribery claim, based upon New York Penal Law § 180.03, are: (1) making an offer or agreeing to confer a benefit on an employee, agent, or fiduciary without the consent of the latter's employer or principal; (2) with the intent to influence conduct in relation to the employer or principal; and (3) the value of the benefit conferred or offered exceeds one thousand dollars and causes economic harm to the employer or principal exceeding two-hundred fifty dollars. N.Y Penal Law § 180.03 (McKinney 2010). Plaintiff clearly has not and cannot state a claim for commercial bribery against Defendant Piccotti. Therefore, the Court recommends that the Plaintiff's Complaints be dismissed in their entirety as against Piccotti, without leave to replead.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED** that Plaintiff's Title VII claim against Defendant SUNY Upstate be allowed to proceed; and it is further

---

[11] Even civil claims for commercial bribery have seldom been recognized outside of the Appellate Division Fourth Department of the New York State Supreme Court. *See, e.g., Sardanis v. Sumitomo Corp.*, 718 N.Y.S.2d 66 (1st Dep't 2001) (disagreeing with *Freed* and holding that a private right of action is not implied under Penal Law § 180.03; *Phillip Morris, Inc. v. Grinnell Lithographic Co., Inc.*, 67 F. Supp.2d 126, 139-40 (E.D.N.Y. 1999) (same).

**RECOMMENDED** that the following claims be dismissed without leave to amend on Eleventh Amendment grounds: (1) Plaintiff's entire claim against Defendant SUNY under the ADA (Dkt. No. 1); (2) Plaintiff's claim for money damages against Defendant Baldwin in her official capacity under the ADA (Dkt. No. 1); (3) Plaintiff's entire claim against Defendant SUNY Upstate under the NYSHRL for discrimination based on Plaintiff's criminal conviction (Dkt. No 1-1); and (4) Plaintiff's claim for money damages against Defendant Baldwin in her official capacity under the NYSHRL for discrimination based on Plaintiff's criminal conviction (Dkt. No. 1-1); and it is further

**RECOMMENDED** that the followings claims be dismissed for failure to state a claim, with leave to amend: (1) Plaintiff's claim under the ADA for equitable relief of instatement against Defendant Baldwin in her official capacity (Dkt. No. 1-1); (2) Plaintiff's claim against Defendant Baldwin in her individual capacity under the NYSHRL for discrimination based upon Plaintiff's criminal conviction (Dkt. No. 1-1); (3) Plaintiff's claim for the equitable relief of instatement against Defendant Baldwin in her official capacity under the NYSHRL for discrimination based upon Plaintiff's criminal conviction (Dkt. No. 1-1); and (4) Plaintiff's claim against Defendants SUNY Upstate, Baldwin, and Piccotti for the intentional infliction of emotional distress (Dkt. No. 1-1); and it is further

**RECOMMENDED** that the following claims be dismissed for failure to state a claim, without leave to amend: (1) Plaintiff's claim against Defendant Baldwin in her individual capacity under the ADA (Dkt. No. 1); (2) Plaintiff's Title VII claim against Defendant Baldwin (Dkt. No. 1-1); and (3) Plaintiff's attempted bribery claim against Defendant Piccotti (Dkt. No. 1-1); and it is further

15

**RECOMMENDED** that in the event Plaintiff is authorized to file an amended complaint, that he be directed to include all of the claims against the Defendants originally set forth in his two Complaints (Dkt. Nos. 1 and 1-1) which have not been dismissed by the District Court and all of his amended claims in a single amended complaint, which amended complaint will become the operative pleading in the case; and it is further

**RECOMMENDED** that in the event Plaintiff is authorized to, and thereafter files a timely amended complaint, that the Clerk be directed to issue a summons to each Defendant named in the amended complaint and forward them, along with a copy of the amended complaint and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York for each Defendant, to the United States Marshall for service upon Defendants, and to schedule a Rule 16 conference; and it is further

**RECOMMENDED** that in the event Plaintiff is denied leave to file an amended complaint, or is granted leave to file an amended complaint but fails to do so within the time directed by the Court, that the Complaint filed at Dkt. No. 1 be dismissed in its entirety assuming that the District Court has adopted the recommendations set forth herein with regard to dismissal of Plaintiff's ADA claims, and that the Clerk be directed to issue a summons to Defendant SUNY Upstate and forward it, along with a copy of the Complaint filed at Dkt. No. 1-1 and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshall for service upon Defendant SUNY Upstate, and to schedule a Rule 16 conference; and it is further

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing

parties or their counsel.  **Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.**  Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

    **ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation, along with copies of all decisions cited herein that are exclusively reported on electronic databases, on Plaintiff.

    Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure 72.

Dated: January 16, 2012
       Syracuse, New York

                                Thérèse Wiley Dancks
                                United States Magistrate Judge